Larry R. Laycock (Utah Bar No. 4868)
llaycock@mabr.com
MASCHOFF BRENNAN
111 S. Main Street
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361

*Attorney for Plaintiff Chase Media Group, Inc. dba Chase Marketing*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **CHASE MEDIA GROUP, INC. DBA CHASE MARKETING,** a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>**NUVO RESIDENTIAL, LLC DBA NUVOH2O,** a Utah limited liability corporation,<br><br>Defendant. | **COMPLAINT**<br><br>Civil Action No. 2:19-cv-00303-JNP<br><br>Judge Jill N. Parrish<br><br>Tier 2<br><br><br>JURY DEMANDED |

Plaintiff Chase Media Group, Inc. dba Chase Marketing ("Chase" or "Plaintiff"), by its undersigned counsel, hereby alleges the following against Nuvo Residential, LLC dba NuvoH2O, ("Defendant"), a Utah limited liability corporation.

## <u>VENUE</u>

1.      Venue is proper in this Court because the majority of the performance of the contract at issue occurred in Lehi, Utah County, Utah.

**THE PARTIES**

2.      Plaintiff is a Utah corporation duly organized, validly existing, and in good standing under the laws of Utah.

3.      On information and belief, Defendant is a Utah limited liability corporation with its principal place of business located at Freeport Industrial Parkway Building Z-13, Unit 15 Clearfield, Utah 84015.

4.      This Court has jurisdiction over Defendant because the majority of the performance of the contract at issue occurred in Lehi, Utah County, Utah.

**RELATED INDIVIDUALS AND ENTITIES**

5.      On information and belief, Scott Wilson was a former president of Defendant.

6.      On information and belief, David Rowe is the current president of Defendant.

7.      On information and belief, Daniel Duke is the current director of accounting of Defendant.

8.      Adam Chase is the current chief executive officer for Chase Marketing Group.

9.      Mike Chase is the current president and founder for Chase Marketing Group.

10.      On information and belief, TheBlaze is a division of Mercury Radio Arts.

**FACTUAL BACKGROUND**

11.      Chase is a leading and highly respected marketing firm in the Salt Lake City, Utah area. For over 25 years, Chase has provided excellent creative, design, advertising and marketing services to its clients.

I.      **Nature of the Action**

12.     This case arises from Defendant's breach of contract in violation of Utah state law.

II.     **Chase Becomes Defendant's Agency of Record**

13.     On or about September 10, 2015, Scott Wilson, on behalf of Defendant, executed an official letter ("Agency Letter") within which Defendant authorized Chase as Defendant's agency of record for media negotiating, placement, production, and billing for Defendant (see Exhibit A).

14.     Shortly thereafter, Chase began providing advertising services by obtaining advertising on Defendant's behalf including, for example, radio advertisements on KZNS, KNRS, and the Glenn Beck Radio Program and television advertisements on Comcast, KSL, KJZZ, and KOLO TV (see Exhibit D).

III.    **Parties Enter Into a Contract**

15.     On or about November 3, 2015, Daniel Duke, on behalf of Defendant, completed a credit application ("Credit Application") and executed an advertising agreement with Chase ("Contract") (see Exhibit B and Exhibit C).

16.     Under the Contract, Chase agreed to provide marketing services for and to extend credit to Defendant; and Defendant agreed to provide payment in exchange for Chase's marketing services and extended credit, acknowledged and agreed to pay for any and all amounts of credit extended to it by Chase within thirty days of the date of each invoice provided by Chase, acknowledged and agreed that any delinquent accounts would be subject to finance charges of one and one-half percent per month, or eighteen percent per year, and acknowledged

and agreed to pay all costs of collection, including reasonable attorney's fees for purposes of collecting any delinquent payments (see Exhibit C).

17.     During November 2015, Chase continued providing marketing services for Defendant.

18.     On or about November 30, 2015, Chase sent Defendant an invoice for $26,013.00 ("First Invoice") for various radio and television advertisements and other services provided by Chase (see Exhibit D).

**IV.     Defendant Breaches the Contract**

19.     In December 2015, Chase continued to provide marketing services for Defendant.

20.     On or about December 30, 2015, Defendant breached the Contract because Defendant did not pay the $26,013.00 owed in the First Invoice within 30 days of the date of the First Invoice (see Exhibit J).

21.     On or about December 31, 2015, Chase sent Defendant a second invoice for $40,837.00 ("Second Invoice") for various radio and television advertisements (see Exhibit E).

22.     On or about January 14, 2016, Defendant made a late payment of $26,013.00 on the First Invoice. However, Defendant still owed $40,837.00 on the Second Invoice (see Exhibit J).

**V.     Defendant's Two-Part Advertising Campaign with TheBlaze**

23.     In January 2016, Adam Chase and David Rowe traveled to Texas to meet with TheBlaze to discuss a Defendant advertising campaign with TheBlaze ("Blaze Campaign") and to record commercials for the Blaze Campaign.

24.     The Blaze Campaign was a two-part advertising campaign over approximately a six month period that included two separate advertising agreements.

A.     <u>First Blaze Agreement</u>

25.     On or about January 22, 2016, Dave Rowe, acting on behalf of Defendant entered into a first advertising agreement ("First Blaze Agreement") for a fourteen-week advertising campaign that would run from February 22, 2016 to May 29, 2016 (see Exhibit F). The First Blaze Agreement was non-cancellable, included three live hosted TV spots per week during the Glenn Beck Radio program and fifteen sixty-second pre-recorded TV spots per week featuring Brad Staggs (see Exhibit F).

26.     On or about January 31, 2016, Chase sent Defendant a third invoice for $40,108.00 ("Third Invoice") for various radio and television advertisements provided by Chase (see Exhibit G).

27.     On or about February 8, 2016, Defendant made a late payment of $20,000.00 on the Second Invoice. On or about February 22, 2016, Defendant made another late payment of $20,837.00 on the Second Invoice. However, Defendant still owed $40,108.00 on the Third Invoice (see Exhibit J).

28.     On or about February 29, 2016, Chase sent Defendant a fourth invoice for $25,490.00 ("Fourth Invoice") for various radio and television advertisements (see Exhibit H).

29.     Throughout the remainder of 2016, Chase continued to provide marketing services to Defendant and sent monthly invoices and statements to Defendant seeking payment. However, Defendant continued to make late payments and to breach the Contract.

30.     On or about May 26, 2016, Dave Rowe emailed Adam Chase about increased customer returns of Defendant product and about whether the sixty-second TV spots from the First Blaze Agreement were providing sufficient time to advertise the Defendant product.

31.     On or about May 26, 2016, Adam Chase responded via email to David Rowe's email by suggesting a revision to a second advertising agreement ("Second Blaze Agreement") to include more two-minute TV spots in place of the sixty-second TV spots and suggested several ways to address the increased returns of Defendant product.

32.     On or about May 27, 2016, David Rowe responded via email to Adam Chase stating that the suggestions to address the increased returns of Defendant product would be helpful.

33.     On or about May 31, 2016, Adam Chase emailed David Rowe requesting permission to maintain the spending level with TheBlaze for the Second Blaze Agreement and to reallocate the sixty-second TV spots to two-minute TV spots as part of the Second Blaze Agreement.

B.     Second Blaze Agreement

34.     On or about June 2, 2016, Chase, acting as Defendant's agency of record, entered into the Second Blaze Agreement which included a thirteen-week advertising campaign that would run from June 6, 2016 to September 2, 2016. The Second Blaze Agreement was non-cancellable, included three live hosted TV spots per week during the Glenn Beck Radio program, and ten two-minute pre-recorded TV spots per week featuring Brad Staggs.

35.     On or about July 18, 2016, David Rowe emailed Adam Chase expressing concern with a lack of results from the Second Blaze Agreement and informing Chase that, if the trend

continued, Defendant would need Chase's help to put the Second Blaze Agreement on hold until Defendant figured out how to better utilize the remaining time in the Second Blaze Agreement and until Defendant was ready to advertise another product.

36.     On or about July 25, 2016, Adam Chase emailed David Rowe to see if Defendant's sales from the Second Blaze Agreement had improved and to ask whether Defendant still wanted to put the Second Blaze Agreement on hold until the other product was ready to sell.

C.     Defendant Puts Second Blaze Agreement On Hold

37.     On or about July 25, 2016, David Rowe responded via email to Adam Chase stating that Defendant was not selling enough to viewers of TheBlaze to justify the cost of the Second Blaze Agreement and to ask that the Second Blaze Agreement be placed on hold.

38.     On or about July 27, 2016, Adam Chase, on behalf of Chase, contacted TheBlaze to put the Second Blaze Agreement on hold. Although the Second Blaze Agreement was non-cancellable and did not allow for holds, Chase worked with TheBlaze to put the campaign on hold shortly thereafter anyway. Although four on Defendant's live hosted TV spots and two of Defendant's two-minute pre-recorded TV spots ran the following week, they ran at TheBlaze's expense. In addition, TheBlaze agreed to credit Defendant with four live hosted TV spots and two two-minute pre-recorded TV spots upon Defendant resuming their second advertising campaign.

39.     While second advertising campaign with TheBlaze was on hold, Chase continued to provide advertising services via radio advertisements for Defendant through the remainder of 2016.

40.     On or around November 16, 2016, Chase began to apply monthly finance charges to Defendant's invoices that were not paid within 30 days of the invoice date (see Exhibit J). Prior to November 2016, Chase had not applied monthly finance charges to Defendant's delinquent accounts as a courtesy to Defendant even though the Contract allowed for such charges (see Exhibit C).

41.     At the end of 2016, Defendant still owed $173,407.60 to Chase (see Exhibit J).

D.     <u>Defendant Breaches the Second Blaze Agreement</u>

42.     Although Defendant represented that it intended to fulfill the Second Blaze Agreement after the hold, Defendant breached the Second Blaze Agreement by not fulfilling the remainder of the Second Blaze Agreement.

## VI.     <u>Chase's Good Faith Efforts to Work with Defendant on Repayment</u>

43.     On or about February 3, 2017, Mike Chase spoke with David Rowe regarding a payment plan to pay off Defendant's outstanding balance. On or about February 6, 2017, David Rowe expressed an intent to pay Chase a minimum of $20,000.00 per month until Defendant paid of their outstanding balance.

44.     On or about January 2017, Defendant made a payment of $10,000.00 to Chase (see Exhibit J).

45.     On or about February 3, 2017, Mike Chase advised David Rowe via email that Chase's line of credit through the Bank of American Fork was in jeopardy of non-renewal because of the high level of outstanding credit Chase had incurred as a result of Defendant's outstanding debt.

46.     On or about February 21, 2017, Mike Chase again advised David Rowe that Chase's line of credit was in jeopardy of non-renewal if the outstanding $20,000.00 per month was not made up.

47.     On or about February 27, 2017, Defendant made a payment of $10,000.00 to Chase (see Exhibit J). Fortunately, Chase was able to convince the Bank of American Fork to renew their line of credit even though Defendant was not following the repayment plan.

48.     From March 2017 through July 2017, Defendant paid a total of $50,000.00 to Chase (see Exhibit J). However, Defendant failed to make payments in August 2017 and September 2017. On or about October 25, 2017, Chase reached out to inform Defendant of Chase's continued obligation to demonstrate progress toward repayment to the Bank of American Fork for the loan taken out to pay for the advertising services purchased on Defendant's behalf.

49.     On or about October 31, 2017, Defendant made a payment of $10,000.00 to Chase (see Exhibit J).

50.     From November 2017 to April 2018, Defendant paid $5,000.00 per month to Chase (see Exhibit J).

51.     From January 2017 and April 2018, Defendant made fourteen payments (see Exhibit J).

52.     On or around April 17, 2018, Chase discovered that Defendant was obtaining advertising services from a different provider even though Defendant still owed Chase $86,319.33 and Chase had paid all of Defendant's media bills as a gesture of good faith (see Exhibit J).

53.     From May 2018 to July 2018, Defendant made three final payments in the amounts of $4,889.12; $8,820.00; and $10,320.00 (see Exhibit J).

**VII.     Defendant Ceases Making Payments to Chase**

54.     As of July 31, 2018, Defendant's outstanding balance was $60,856.97.

55.     No payments have been made to Chase by Defendant since July 2018.

**VIII.     Chase Makes Various Additional Good Faith Collection Attempts**

56.     On or around December 17, 2018, Chase sent a letter to Defendant seeking payment for past services rendered and interest for delinquent payments ("First Demand Letter"). Defendant responded to the First Demand Letter but did not provide payment to Chase (see Exhibit K).

57.     On or around January 24, 2019, Chase sent a follow-up letter to Defendant seeking payment for past services rendered and interest for delinquent payments ("Second Demand Letter") (see Exhibit L). Defendant did not respond to the Second Demand Letter.

58.     As of May 1, 2019, Defendant owes Chase $70,626.98 under the Contract (see Exhibit J).

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Against Defendant)**

59.     Chase realleges and incorporates by reference paragraphs 1 through 58 as if fully alleged herein.

60.     Defendant entered into the Contract with Chase wherein Chase would act as Defendant's agency of record and would obtain marketing services on Defendant's behalf and extend credit to Defendant, and wherein Defendant would provide payment in exchange for

Chase's marketing services and extended credit and pay finance charges of one and one-half percent per month on any delinquent payments.

61.     Chase performed all of its obligations under the agreement.

62.     On or about December 30, 2015. Defendant breached the Contract. Defendant remains in breach of the Contract because Defendant has not paid Chase for all of the services rendered by Chase. In addition, Defendant has not paid for all the finance charges for Defendant's delinquent payments. Furthermore, Defendant is required by the Contract to pay reasonable attorney's fees for purposes of collecting Defendant's delinquent payments.

63.     No conditions existed prior to Chase's performance of the services rendered, and Defendant's performance was not excused.

64.     Chase was damaged by Defendant's breach in the amount of $70,626.98 plus any additional monthly accrued interest from May 2019 to date of payment for judgment.

## PRAYER FOR RELIEF

WHEREFOR, Chase prays for the following relief:

1.     Compensatory damages for services rendered and accrued interest in the amount of $70,626.98;

2.     Additional monthly accrued interest from May 2019 to date of payment for judgment;

3.     Attorney's fees and costs in this action, according to the agreement and to the greatest extent permissible under the law;

4.     Punitive damages against Defendant;

5.     Any other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action for which a trial by jury may be had.


DATED:  May 3, 2019                              Larry R. Laycock
                                                 MASCHOFF BRENNAN

                                                 By:    _/s/ Larry R. Laycock_____
                                                        Larry R. Laycock
                                                    Attorney for Plaintiff, Chase Marketing Group

Plaintiff:
Chase Media Group Inc. d/b/a Chase Marketing
2912 Executive Parkway
STE 200
Lehi, UT 84043
Telephone: (801) 768-2288